**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| CTD NETWORKS LLC,<br>*Plaintiff*<br><br>-vs-<br><br>CISCO SYSTEMS, INC.,<br>*Defendant* | § § § § § § § § § § § | W-22-CV-01039-XR |

## <u>ORDER</u>

On this date, the Court considered Defendant Cisco Systems, Inc.'s motion to dismiss (ECF No. 45), Plaintiff CTD Networks LLC's response (ECF No. 46), Defendant's reply (ECF No. 47), and the parties' arguments at the hearing held on June 29, 2023. After careful consideration, the Court issues the following order.

## BACKGROUND

### I.    Factual Background

Plaintiff CTD Networks LLC ("CTD") alleges causes of action against Defendant Cisco Systems, Inc. ("Cisco") for direct and willful infringement of four patents owned by CTD (collectively, the "Patents-in-Suit") relating to computer security: U.S. Patent Nos. 8,327,442 (the "'442 patent"), 9,438,614 (the "'614 patent"), 9,503,470 (the "'470 patent"), and 11,171,974 (the "'974 patent"). *See* ECF No. 44 at 6–10.[1,2] All four asserted patents relate to distributed agent-based models for security monitoring ("SDI-SCAM").

---

[1] The '442 patent, entitled "System and method for a distributed application and network security system", was issued by the United States Patent and Trademark Office ("USPTO") on December 4, 2012. *See* ECF No. 44-1 at 2–14. The '614 patent, entitled "Sdi-scam", was issued on September 6, 2016. *See id.* at 16–29. The '470 patent, entitled "Distributed agent based model for security and response", was issued on November 22, 2016. *See id.* at 31–48. The '974 patent, entitled "Distributed agent based model for security monitoring and response", was issued on November 9, 2021. *See id.* at 50–67.

[2] Page numbers in citations to the record refer to PDF page numbers as the document was filed on CM/ECF, which are not necessarily the same as the page numbers in the underlying documents.

This is one of six lawsuits CTD filed in the Western District of Texas in October 2022 alleging infringement of the Patents-in-Suit.[3] CTD alleges that Defendant directly infringes on at least one claim of each asserted patent: claim 1 of the '442 patent, claim 10 of the '614 patent, claim 1 of the '470 patent, and claim 1 of the '974 patent.[4] At a high level, the asserted claims cover systems with a network of "agents" on computers that perform specific security functions, including gathering and analyzing information, determining the likelihood of a threat, and generating counteroffensive measures.

### 1.    The '442 and '614 Patents

The '442 and '614 patents both describe a "distributed multi-agent system" that uses "agents" on end-user computer hardware to monitor the user's network for security threats. '614 patent, Abstract; *see also* '442 patent, Abstract (describing "[u]sing a combination of intelligent *client-side* and server-side agents . . . to detect, prevent, and repair a wide variety of network intrusions."). The "basic architectural approach" of the invention claimed in these patents "is that each node of a computer network is loaded with an agent capable both of ensuring security at the

---

[3] *See* (1) *CTD Networks LLC v. Amazon.com, Inc.*, No. 6:22-cv-1034-XR (the "Amazon Action"); (2) *CTD Networks LLC v. AT&T Inc.*, No. 6:22-cv-1038-XR (voluntarily dismissed on February 3, 2023); (3) *CTD Networks, LLC v. Cisco Systems, Inc.*, No. 6:22-cv-1039-XR (the "Cisco Action"); (4) *CTD Networks, LLC v. Google, LLC*, No. 6:22-cv-1042-XR (the "Google Action"); (5) *CTD Networks, LLC v. International Business Machines Corporation*, No. 6:22-cv-1044-XR (voluntarily dismissed on April 20, 2023); and (6) *CTD Networks LLC v. Microsoft Corporation*, No. 6:22-cv-1049-XR (the "Microsoft Action").

Plaintiff filed four additional lawsuits in December 2022 premised on violations of the Patents-in-Suit. *See* (1) *CTD Networks LLC v. Akamai Technologies, Inc.*, No. 6:22-cv-1302-XR (voluntarily dismissed on April 14, 2023); (2) *CTD Networks LLC v. Musarubra US LLC*, No. 6:22-cv-1303-XR (voluntarily dismissed on June 12, 2023); (3) *CTD Networks LLC v. Palo Alto Networks, Inc.*, No. 6:22-cv-1303-XR (voluntarily dismissed on March 24, 2023); (4) *CTD Networks LLC v. Verizon Communications, Inc.*, No. 6:22-cv-1303-XR.

[4] Discussing a "claim" in the patent context can be confusing given the term's dual meaning. "Claim" might refer to a "cause of action," or it might refer to the portion of a patent that follows the patent's specification and defines the scope of the patentee's monopoly. *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014). To avoid confusion, the Court uses "cause of action" when referring to Plaintiff's allegations and uses "claim" in the patent sense.

locality of the machine on which it is installed, and of communicating with other [] agents across the network." '442 patent 2:17–21.

The '442 and '614 patents both require the agents to be installed on computer hardware. *See* '442 patent 2:31–35 ("The preexisting elements of this network security system are the machines themselves."). For example, claim 1 of the '442 patent recites "[a] distributed security system . . . , said system comprising individual computers having agents associated therewith." And claim 10 of the '614 patent recites "[a] system . . . having a plurality of nodes." As the specifications make clear, a "node" includes computer hardware components. '614 patent 11:50–52 ("Those nodes which are part of or associated with in some way the same internal network, e.g., sharing physical hardware components . . . ."); '442 patent 2:32–35 ("It is assumed that these systems, which act as the nodes of a network, consist of heterogeneous pieces of hardware. . . .").

Once installed on the computer network, the claimed "agents" must (1) create statistical models of computer usage, (2) determine a pattern of usage that represents a threat to the computer or the computer network, (3) determine a probability of threat based on pattern analysis, (4) and warn other agents of any intrusion or attack. '442 patent 15:51–16:9; '614 patent 19:33–46.

In addition to these common requirements, claim 1 of the '442 patent further requires that each agent must schedule "different anti-viral software updates" for the respective end-user machine on which it is installed. '442 patent 16:14–20. Each agent must regularly schedule its computer for custom antivirus software updates based on the unique probability of an intrusion or attack against that particular computer. *Id.* And each agent must, whenever *any* computer in the network is attacked, forsake the schedule and "immediately" provide the antivirus software update to its end-user computer. *Id.* at 16:21–27.

### 2. The '470 and '974 Patents

The '470 and '974 patents are both directed to "a widely distributed security system . . . that protects computers at individual client locations" by implementing a two-prong approach: (1) security monitoring and (2) a counteroffensive response. '470 patent, Abstract; *see also id.* at 21:64–22:2.

Notably, the '470 and '974 patents call for security monitoring in the same manner already discussed—with agents installed on hardware components in a computer network (i.e., end-user devices). These '470 and '974 patents build on the ideas disclosed in the other two patents by adding a "response"—i.e., a counteroffensive measure taken when a threat is detected. For example, claim 1 of the '470 patent requires the agent to "generate counter-offensive measures" capable of disabling the operating system of an attacker's computer. '470 patent 28:23; *see also id.* at 23:14–50. Similarly, claim 1 of the '974 patent requires each agent to be capable of generating counteroffensive measures in response to a perceived security threat (meaning, as discussed in the specification, disabling an attacker's operating system and holding their machine hostage). *Id.* at 28:27–34.

## II.   Procedural History

Plaintiff filed its original complaint on October 5, 2022, asserting causes of action for direct infringement of the asserted patents pursuant to 35 U.S.C. §271(a) and seeking treble damages for willful infringement under 35 U.S.C. § 284. *See* ECF No. 1 at 6–10. Thereafter, Defendant filed an answer to the original complaint, followed by a motion for judgment on the pleadings under Rule 12(c). ECF Nos. 19, 24. Nearly two months later, weeks after the parties completed briefing on the motion, Plaintiff sought leave to file an amended complaint. ECF No. 38.

At a hearing on April 10, 2023, the Court identified a number of defects in both the original complaint and the proposed amended complaint.[5] First, the Court concluded that both the original complaint and Plaintiff's proposed amended complaint were deficient because they failed to identify a single product that practiced each limitation of the patent claims. Instead, the claim chart attached to the original complaint attempted to "mix and match" aspects of Defendant's various security systems, alleging that *some* products meet *some* limitations of different claims without alleging how the products work together to infringe on the patented systems. *See* Hr'g Tr. at 17:5–9 ("[T]he current complaint says, again, 'by way of example and without limitation Cisco's Cloud Solution System,' and then your various exhibits reference Cloud Analytics, Security Intelligence Operations, Secure Access by Duo, Umbrella, ThousandEyes, and you also reference Tetration."). The Court further held that Plaintiff had failed to assert facts sufficient to support its allegation of willful infringement and pre-suit damages. Plaintiff agreed to drop those allegations but reserved the right to reassert them later in the event discovery revealed facts that would support them. *Id.* at 14:20–23.

The Court rejected Plaintiff's proposed amended complaint and directed Plaintiff to file an amended complaint identifying a single accused product—without using the language "by way of example and without limitation"—and explaining how the product satisfied every limitation of each allegedly infringed patent claim. *Id.* at 17:10–13; 18:7–10. In light of the forthcoming amended complaint, the Court denied Defendant's motion for judgment on the pleadings as to Plaintiff's claim for direct infringement, but granted it as to the claims for willfulness and pre-suit damages. *Id.* at 18:2–4. The Court warned that failure to cure the deficiencies in the pleadings,

---

[5] On the same date, the Court held hearings on motions to dismiss in CTD's cases against Amazon, Google, and Microsoft. The official hearing transcript cited herein was filed only in the Amazon Action. *See* Amazon Action, No. 6:22-cv-1034-XR, ECF No. 33.

including the attached claim chart, would result in cost-shifting measures. *Id.* at 17:20–23; 18:10–13.

On April 21, 2023, CTD filed its First Amended Complaint ("FAC") defining the "Accused Instrumentalities" or "Accused Products" as, "by way of example and without limitation, Cisco's workload protection platform known as Cisco Secure Workload, also formerly known as Tetration. *See* https://www.cisco.com/site/us/en/products/security/secure-workload/index.html." ECF No. 44 at 6. Despite the Court's previous dismissal of Plaintiff's allegation of willfulness, the Amended Complaint again seeks treble damages for willful infringement, alleging that Defendant has known that its conduct "infringed on one or more claims of the '442 Patent since at least February 9, 2021." *Id*.

Defendant now moves to dismiss the FAC with prejudice under Rule 12(b)(6), arguing that it fails to plausibly allege that Defendant provides the hardware components necessary to infringe the patented systems and omits allegations as to material elements of each of the asserted claims. ECF No. 45 at 7–17. Defendant also seeks dismissal of the willfulness allegations in the FAC. *Id.* at 17–19. Plaintiff opposes the motion, asserting that it has provided "fair notice" of its allegations against Defendant and that any inquiry into the material elements of the asserted claims would be premature prior to claim construction briefing. *See* ECF No. 46. In the alternative, Plaintiff seeks leave to further amend its pleadings to cure any deficiencies identified in the First Amended Complaint. *Id.* at 9.

The Court heard oral arguments on June 29, 2023, and took the motion under advisement. For the reasons stated herein, Defendant's motion is **GRANTED**.

**DISCUSSION**

**I.      Legal Standard**

In patent cases, issues that are unique to patent law are governed by Federal Circuit precedent. *See Woods v. DeAngelo Marine Exhaust Sys., Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). But because motions to dismiss under Rule 12(b)(6) raise purely procedural issues, courts apply the law of the regional circuit—here, the Fifth Circuit—when deciding whether such a motion should be granted. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401

F.3d 638, 642 (5th Cir. 2005) (The Court should not "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

An element-by-element pleading of fact for each asserted patent claim is not required, *Sesaco Corp. v. Equinom Ltd.*, No. 1:20-CV-1053-LY, 2022 WL 1546642, at *1 (W.D. Tex. Mar. 11, 2022), but: "To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019). "The adequacy of the facts pleaded depends on the breadth and complexity of both the asserted patent and the accused product or system and the nature of the defendant's business activities." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013). Under any standard, "the complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." *Vervain, LLC v. Michron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)).

A plaintiff may plausibly plead a cause of action for direct infringement by providing the asserted patents, identifying the accused products "by name" and "attaching photos of the product packaging," and alleging that the accused products meet "each and every element of at least one claim." *Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). But, a plaintiff may still fail to plausibly state a claim where (1) the infringement allegation rests on an implausible claim construction, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018), or (2) the factual allegations are actually inconsistent with and contradict infringement. *Bot M8 LLC*, 4 F.4th at 1354. In sum, "[t]he court's task is to determine whether the plaintiff has stated a legally

cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387.

## II.     Analysis

### A.     Plaintiff's Causes of Action for Direct Infringement

Direct patent infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor." 35 U.S.C. § 271(a).

A plaintiff alleging direct infringement must plead facts that show the defendant "makes, uses, offers to sell, or sells" a *complete* patented invention. 35 U.S.C. § 271(a). "Direct infringement by 'use' of a claimed system requires use of *each and every element* of the system." *Synchronoss Techs. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021) (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*, 631 F.3d 1279, 1288 (Fed. Cir. 2011)). "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284. Similarly, infringement by "making" or "selling" a system requires a *complete* infringing system: "one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention." *Synchronoss*, 987 F.3d at 1368. In order to "make" a system under § 271(a), a defendant must "combine all of the claim elements."

Defendant asserts that Plaintiff has failed to adequately allege that Defendant, as a software provider, makes, uses, sells, or imports all of the hardware components of the claimed systems. *See* ECF No. 45 at 8–12 (citing *Centillion*, 631 F.3d at 1281–88). Merely providing software for a customer to use does not constitute direct infringement of a patent that requires a combination of both software and hardware. *See Centillion*, 631 F.3d at 1286–88; *see also Synchronoss*, 987 F.3d

at 1369 ("Because Drop-box does not provide its customers with any hardware in conjunction with its accused software, Dropbox does not make, sell, or offer for sale the complete invention.")).

In *Centillion*, the claim at issue required an end user-maintained "front-end" system and service provider-maintained "back-end" system. *Id.* at 1281. The defendant provided "front-end" software to its customers and provided "back-end" data processing services. *Id.* The customers used the "front-end" software to trigger data processing by the defendant's "back-end" system. *Id.* The court held that *customers* "used" the entire system because they entered queries into the front-end that caused the back-end system to perform the processing the claim required. *Id.* at 1285. It did not matter that a third party "physically possessed" the back-end processing, because customers had control via the "ability to place the system as a whole into service." *Id.* at 1284. The defendant, on the other hand, did not "use" the patented invention. *Id.* at 1286. Merely making the processing system does not "put the claimed invention into service, i.e., control the system and obtain a benefit from it," because "[s]upplying the software for the customer to use is not the same as using the system." *Id.* While the defendant provided software and technical assistance, "it is entirely the decision of the customer whether to install and operate this software on its personal computer data processing means." *Id.* at 1287. Thus, the customer "used" the system and controlled each element, but the service provider did not. *Id.*

Plaintiff does not allege that Defendant manufactures the hardware used to the claimed systems. Nor does it explain how Defendant, merely by providing security software, might use—much less control—a system according to the claims.[6] Plaintiff does not allege that Defendant controls or benefits from such systems—rather, Defendant's customers complete and use the

---

[6] Plaintiff's bare and conclusory assertion that Defendant infringed the Patents-in-Suit by "testing" the Accused Product, ECF No. 44 at 6, is insufficient to support Plaintiff's allegation that Defendant "used" any of the claimed systems. *See Phillips*, 401 F.3d at 642 (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

systems by downloading the necessary software to their hardware. *See id.* at 1286 ("While Qwest may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service [the personal computer element]. Supplying the software for the customer to use is not the same as using the system."). Plaintiff therefore fails to plausibly allege that Defendant sells, offers to sell, or imports into the United States a system as recited in the claims. *See* 35 U.S.C. § 271(a).

Plaintiff responds that Defendant's "arguments related to hardware are inappropriate prior to claim construction." ECF No. 46 at 3. Plaintiff notes that, in *Synchronoss*, the Federal Circuit affirmed the district court's grant of summary judgment following claim construction. *Id.* at 4. Claim construction itself, however, "is required only 'when the meaning or scope of technical terms and words of art is unclear . . .  and requires resolution to determine' the issue before the court." *Hastings v. United States*, 78 Fed. Cl. 729, 733 (Fed. Cl. 2007) (quoting *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)). Dismissal with prejudice is appropriate when a claim element "cannot plausibly be construed to include or be the equivalent of [the accused structure], in view of the specification and the prosecution history." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018); *see also MG Freesites Ltd. v. ScorpCast LLC*, No. 20-1012-MFK, 2023 WL 346301, at *11 (D. Del. Jan. 20, 2023) (rejecting argument that because *Centillion* was decided on summary judgment, it cannot apply at the pleadings stage, and noting that "the Federal Circuit has not suggested that the *Centillion* framework is applicable only at summary judgment.").

The claims charted in the FAC plainly recite *systems* with *hardware* components. Specifically, each asserted claim requires a system claim having multiple "agents" on computers that perform various security functions:

- '442 patent, cl. 1: "A distributed security system that protects **individual computers** in a computer network having a plurality of computers, **said system comprising individual computers having agents associated therewith** . . . ." (emphasis added)

- '614 patent, cl. 10: "A system that detects the state of a computer network having plurality of nodes, said system comprising **a plurality of distributed agents** . . . said agents . . . alerting other agents, a central **server**, and/or human operator." (emphasis added)

- '470 patent, cl. 1: "A system that detects the state of a computer network, comprising "**a plurality of distributed agents** disposed in said computer network, each said distributed agent including a **microprocessor** adapted to: passively collect, monitor, and aggregate data . . . ." (emphasis added)

- '974 patent, cl. 1: "a system that detects the state of a computer network, comprising: **a plurality of distributed agents** disposed in said **computer network**, each said distributed agent comprising: **at least one sensor** that analyzes network traffic data . . . **a distributed adapted machine learning model** that analyzes the aggregated data . . . and the **means for communicating** at least the aggregated data to other distributed agents on a peer-to-peer basis." (emphasis added)

Plaintiff has not plausibly explained how claim construction could help its case—that is, how the Court could possibly construe the claims to exclude the hardware components from each of the claimed systems. Accordingly, dismissal of Plaintiff's claim for direct infringement is warranted. *See ALD Soc. LLC v. Google LLC*, No. WA-22-CV-972-FB, 2023 WL 3184631, at *4–5 (W.D. Tex. Mar. 17, 2023) (granting defendant's motion to dismiss with prejudice where plaintiff asserted contrary meaning for claim language yet did not "point to any evidence supporting its reading of the claims."); *see also Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016) (dismissing complaint for failure to state a claim where "Ruby Sands makes no factual allegations that even remotely suggest that CNB, a bank, makes, uses, offers to sell, or sells mobile devices").

Because Plaintiff fails to plausibly allege that Defendant sells, offers for sale, or imports into the United States any claimed system, inclusive of the claimed hardware components,[7] the Plaintiff's claims of direct infringement must be dismissed. Accordingly, the Court does not reach Defendant's argument that Plaintiff's allegations overlook material claim limitations in each of the Patents-in-Suit.

### B.    Plaintiff's Allegation of Willfulness

A party seeking enhanced damages under 35 U.S.C. § 284 for willful patent infringement "must show that an infringer's conduct has been 'willful,' or 'wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.'" *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 774 (W.D. Tex. 2022) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016)). "Enhanced damages should 'generally be reserved for egregious cases typified by willful misconduct.'" *Id.* (quoting *Halo*, 579 U.S. at 106). A plaintiff alleging willful patent infringement must "allege facts plausibly showing that the accused infringer: '(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'" *Id.* Importantly, "[m]ere knowledge of the Asserted Patents is not enough" to establish knowledge of infringement. *Id.* at 777.

The Court first notes that Plaintiff's claims for enhanced damages must be dismissed because Plaintiff's claims against Defendant for direct infringement have been dismissed. *See Halo*, 579 U.S. at 110 ("Section 284 gives district courts the discretion to award enhanced damages

---

[7] At the June 29, 2023 hearing, Plaintiff asserted for the first time that it intended to allege infringement of a method claim. No such allegations appear in the claim chart, however. *See* ECF No. 44-1. Moreover, a method patent is not directly infringed unless all the steps identified in the method are carried out by the same entity. *See* 35 U.S.C. § 271(a); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014). Even assuming that Plaintiff had asserted infringement of a method claim, the claim would again presumably be infringed by Defendant's *customers*, as the individuals and entities performing the relevant steps.

against those guilty of patent infringement. . . . Those principles channel the exercise of discretion, limiting the award of enhanced damages to egregious cases of misconduct *beyond typical infringement*.") (emphasis added). Second, the Court notes that Plaintiff's counsel acknowledged at the June 29, 2023 hearing that "[t]he willfulness claims should have been dropped." Hr'g Tr. at 5:2–4.

Finally, the Court notes that the FAC otherwise fails to allege sufficient facts to support the elements of willfulness. Plaintiff asserts that "Defendant has known that its activities concerning the Accused Products infringed on or more claims of the '442 Patent since at least February 9, 2021." ECF No. 44 at 6. As the motion to dismiss notes, however, the Amended Complaint does not plausibly explain how or why Cisco would have known that its conduct amounted to infringement. ECF No. 45 at 18. In response, Plaintiff points to a PowerPoint presentation provided to Cisco on February 9, 2021, that allegedly proves "pre-suit knowledge of the Patents-in-Suit." ECF No. 46 at 8; *see also* ECF No. 46-1. Because mere knowledge of the Patents-in-Suit is insufficient to establish that Defendant "knew, or should have known," that its conduct amounted to patent infringement, the PowerPoint presentation does nothing to save Plaintiff's willfulness allegation. *See BillJCo.*, 583 F. Supp. 3d at 776–77 (dismissing willfulness allegation where plaintiff merely alleged that it "sent [defendant] a letter on June 5, 2019 regarding the Patents-in-Suit," but "reveal[ed] almost nothing about the nature and contents of the June 2019 Letter"). Plaintiff's willful infringement allegations are therefore dismissed.

## C.     Plaintiff's Request for Leave to Amend

Defendant asks the Court to deny Plaintiff's request for leave to further amend its complaint as futile and because the request is not sufficient to invoke Rule 15(a), which governs motions for leave to file amended pleadings. ECF No. 47 at 12–14.

Rule 15(a) applies where a plaintiff has "expressly requested" leave to amend even though its request "was not contained in a properly captioned motion paper." *United States v. Humana Health Plan*, 336 F.3d 375, 387 (5th Cir. 2003). A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought. *Id.* (citing FED. R. CIV. P. 7(b) and *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445–46 (9th Cir. 1990)). However, "a bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which the amendment is sought, *cf.* FED. R. CIV. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993); *see Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018) ("At the end of their opposition to the motion to dismiss, Appellants stated that they 'should be given an opportunity to amend . . . to further state any claims considered deficient' and 'to plead further' Richard's claims. These statements are insufficient to constitute a request for leave to amend under Rule 15(a).").

Here, Plaintiff's bare request for leave to amend in its response to Defendant's motion to dismiss does not offer any explanation as to how its amendment would cure any deficiencies in its pleading. ECF No. 47 at 12–14. Moreover, given Plaintiff's previous failure to amend its complaint in accordance with the Court's instructions, granting further leave to amend would likely be futile. *See* ECF No. 44 at 6 (alleging willful infringement and defining Defendant's allegedly infringing product "by way of example and without limitation," despite the Court's clear instructions to the contrary at the April 10, 2023 hearing). Thus, Plaintiff's request for leave to file a further amended complaint is denied.

**CONCLUSION**

For the foregoing reasons, Defendant Cisco Systems, Inc.'s motion to dismiss Plaintiff's First Amended Complaint (ECF No. 45) is **GRANTED**, and Plaintiff's causes of action against Defendant are **DISMISSED WITH PREJUDICE**. Defendant is awarded costs and may file a bill of costs pursuant to the Local Rules. A final judgment pursuant to Rule 58 will follow.

Defendant is granted leave to file a motion seeking reasonable attorneys' fees incurred in preparing and arguing the motion to dismiss the First Amended Complaint in accordance with the procedures outlined in Local Rule 54(b)(2). Any such motion must demonstrate that this is an exceptional case under 35 U.S.C. § 285. Defendant must file any such motion by no later than **August 30 2023**, or seek an extension of time in which to do so.

It is so **ORDERED**.

**SIGNED** this 16th day of August, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE